826 P.2d 462

**William A. ELLIBEE, Plaintiff–Appellant,**

v.

**Lucille I. ELLIBEE, Defendant–Respondent.**

**No. 18922.**

Supreme Court of Idaho,
Boise, October 1991 Term.

Feb. 11, 1992.

---

Lawrence R. Beck, Coeur d'Alene, for plaintiff-appellant.

David C. Ackley, Priest River, for defendant-respondent.

BISTLINE, Justice.

Based upon the allegation that defendant William A. Ellibee had physically abused their son Tolen during a week in which he had actual custody of the boy, and several visible bruises on Tolen, Lucille Ellibee sought and obtained from District Judge Debra Heise, a temporary *ex parte* order restraining her ex-husband William from having any contact with the Ellibees' children.[1] A hearing date of September 18, 1989, was set by Judge Heise. William Ellibee did not challenge the entry of that order.

At the September 18 hearing, both parties appeared and were represented by counsel. Following presentation of evidence, Magistrate Judge Quentin Harden entered a ninety-day protection order pursuant to the Domestic Violence Crime Prevention Act ("Domestic Violence Act" or "Act"), which order would expire automatically on December 17, 1989. That order granted Lucille temporary custody of Tolen and Elizabeth, and it provided William with supervised visitation rights and telephone contact with his children. William appealed to the district court where District Judge James Michaud, presiding in an appellate capacity, affirmed Judge Harden.

William has further appealed to this Court. Here he challenges Judge Harden's order, asserting that the trial court employed the incorrect standard of proof, and made clearly erroneous findings of fact. In addition, he contends that the court had no jurisdiction under the Domestic Violence Act to enter an order affecting his child

1. Lucille Ellibee is the custodial parent of the children; however, the Ellibees have joint legal custody. At the time of the protection order, Tolen was age four and his sister Elizabeth was age three.

custody rights. He argues that Lucille was limited to proceeding under the Child Protective Act (I.C. tit. 16, ch. 16). We affirm the decisions of Judge Harden and Judge Michaud.

■ Initially, we note that Judge Harden's order expired and became moot after ninety days. We also note that appeals may be dismissed where the only question presented has become moot. *Downing v. Jacobs*, 99 Idaho 127, 578 P.2d 243 (1978); *Western Beverage, Inc. v. State*, 96 Idaho 588, 532 P.2d 930 (1974); and *see Dick v. Geist*, 107 Idaho 931, 693 P.2d 1133 (Ct. App.1985). Since the order which William challenges expired on December 17, 1989, ordinarily a dismissal would not be improper. However, where issues of substantial public interest are presented, we have not dismissed even though technically the appeal is moot. *E.g., Robinson v. Bodily*, 97 Idaho 199, 200, 541 P.2d 623, 624 (1975). In the instant case, as in *Robinson*, "the controversy at the heart of appellant's case remains alive." *Id.* The Domestic Violence Act is of recent enactment, 1988, and has yet to be construed by an appellate court. Because the issues raised in this appeal are quite likely to arise on future occasions, it is appropriate that we address William's concern regarding the scope of the Domestic Violence Act's application, and its requisite standard of proof. Additionally, due to the abbreviated length of protection orders granted under the Act, the time period in which a person is affected may expire prior to judicial review. Otherwise stated, the controversy is susceptible to repetition yet avoiding review. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *State v. Henderson*, 119 Idaho 579, 808 P.2d 1324 (Ct.App.1991).

## I. THE SCOPE OF THE DOMESTIC VIOLENCE ACT

■ Turning to the merits of William Ellibee's contentions, we must first determine whether the Domestic Violence Act was a proper vehicle for Lucille to obtain a protection order against her former husband in favor of Tolen, which is clearly a question of law. In making that determination, we keep in mind the Act's underlying goal, and the legislature's mandate of liberal construction:

The purpose of this act is to address domestic violence as a serious crime against society and to assure the victims of domestic violence the protection from abuse which the law and those who enforce the law can provide.

*It is the intent of the legislature to expand the ability of the courts to assist victims by providing a legal means for victims of domestic violence to seek protection orders to prevent such further incidents of abuse.* It is the intent of the legislature that the official response to cases of domestic violence shall stress the enforcement of the laws to protect the victim and shall communicate the attitude that violent behavior in the home is criminal behavior and will not be tolerated. *The provisions of this chapter are to be construed liberally to promote these purposes.*

I.C. § 39–6302 (Supp.1991) (emphasis added).[2] "A statute is to be construed in consideration of the reason for the statute, its object and purpose and thereby ascertain and render effective the legislative intent." *State v. Hoch*, 102 Idaho 351, 352, 630 P.2d 143, 145 (1981).

To buttress his argument that the Domestic Violence Act was inapplicable in this case, William quotes a portion of § 39–6306 which provides, "[u]pon a showing that there is an immediate and present danger of domestic violence *to the petitioner* the court may, if requested order for a period not to exceed three (3) months that...." (Emphasis added). Since Lucille herself did not claim to be in any immediate danger, William argues, the court had no jurisdiction to enter the protection order. In order to determine what individuals the legislature intended to protect under the Act we

**2.** The 1989 amendments to the Domestic Violence Act discussed herein were approved on March 28, 1989, while the protection order proceeding took place on September 18, 1989. Accordingly, the 1989 amendments are applicable to this case.

must construe all applicable sections and provisions of the Act together. *See Lebrecht v. Union Indem. Co.*, 53 Idaho 228, 22 P.2d 1066 (1933).

The plain language of the Domestic Violence Act ostensibly includes children within its purview. The Act defines "domestic violence" as "the physical injury, sexual abuse or forced imprisonment or threat thereof of a family or household member." I.C. § 39–6303(1). As originally enacted, the Act defined "family or household member" as "spouses, former spouses, *adult* persons related by blood or marriage, persons who reside or have resided together, and persons who have a child in common regardless of whether they have been married or have lived together at any time." 1988 Idaho Sess.Laws, ch. 341, § 39–6303(2) (emphasis added). However, after I.C. § 39–6303(2) was amended in 1989, "family or household member" was defined as "spouses, former spouses, *persons related by blood or marriage, . . . .*" conspicuously excluding the "adult" requirement, and implicitly including minor children under its authority. I.C. § 39–6303(2) (Supp. 1991) (emphasis added).

Idaho Code § 39–6304(2) was also amended in 1989 to provide that "[a] person may seek relief from domestic violence by filing a petition based on a sworn affidavit with the magistrates division of the district court, alleging that the person or a family or household member, *whether an adult or a child,* is the victim of domestic violence." I.C. § 39–6304(2) (Supp.1991) (emphasis to show added language). Section 39–6304(2) also demonstrates that it is entirely consistent with the scheme of the Domestic Violence Act for Lucille to move in her own name as petitioner to protect her children. If any doubt remains on these points, it must be dispelled upon discerning the legislative intent behind the amendments. The introduction to the 1989 session law amendments specifically provide that I.C. §§ 39–6303 and 39–6304 were revised to redefine family or household member, and to provide expedient relief from domestic violence *whether the victim is an adult or a*

*child.* 1989 Idaho Sess.Laws, ch. 136, p. 305.

Apparently, the gist of William's contention is that because he had joint legal custody of his children, Judge Harden lacked authority to apply the Act. A review of the language of I.C. § 39–6306 cited by William demonstrates that that section confers upon courts the authority to *temporarily* affect child custody rights or visitation rights of parties even though prior custody orders are in force:

Upon a showing that there is an immediate and present danger of domestic violence to the petitioner the court may, if requested, order for a period not to exceed three (3) months that:

(a) Temporary custody of the minor children of the petitioner or of the parties be awarded to the petitioner or respondent if exercise of such jurisdiction is consistent with the provisions of section 32–1103, Idaho Code, and consistent with prior custody orders entered by a court of competent jurisdiction unless grounds exist pursuant to section 32–717, Idaho Code. . . .[3]

I.C. § 39–6306(1) (Supp.1991). When altering custody orders, the court must comply with I.C. § 32–717, which also controls permanent custody decisions entered by the trial courts:

In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children. The court shall consider all relevant factors which may include:

1. The wishes of the child's parent or parents as to his or her custody;

2. The wishes of the child as to his or her custodian;

3. The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;

4. The child's adjustment to his or her home, school, and community;

---

**3.** This portion of I.C. § 39–6306 was enacted in 1988 and has never been amended.

5. The mental and physical health and integrity of all individuals involved; and

6. The need to promote continuity and stability in the life of the child.

I.C. § 32–717.

Clearly, the Act empowered Judge Harden with wide discretion to engage in "best interest" analysis, and upon his determination that William had caused Tolen's bruises and the children were in immediate danger of further domestic violence, to temporarily alter William's custody rights awarded under the prior decree. *See Roeh v. Roeh,* 113 Idaho 557, 746 P.2d 1016 (Ct. App.1987). By so holding that the Domestic Violence Act was properly utilized by Lucille and the trial court, we are not commenting on the appropriateness of any other statutory provisions which also may have provided relief in this situation.

## II. THE STANDARD OF PROOF

█ The second issue facing the Court is the applicable standard of proof in a protection order proceeding where a party's child custody rights are affected; the Domestic Violence Act does not specify the standard of proof to be used in proceedings held under its authority. This is also a matter of law as to which we exercise free review. William argues that the required standard of proof in the trial court should have been "clear and convincing evidence" because his fundamental liberty interest as a natural parent was being circumscribed. He relies on *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), for this proposition, which involved a state-initiated proceeding to terminate parental rights. He also cites an Idaho Court of Appeals case, *Hofmeister v. Bauer,* 110 Idaho 960, 719 P.2d 1220 (Ct.App.1986), which applied the *Santosky* principles in a parental rights termination proceeding initiated by a private party.

"A standard of proof reflects the weight ascribed to competing interests, and it embodies a societal judgment about how the risk of fact-finding error should be allocated." *Hofmeister,* 110 Idaho at 963, 719 P.2d at 1223. Pursuant to this philosophy, the *Hofmeister* court held that parental interest in a privately initiated termination action deserved as much protection from the risk of fact-finding error as in a government initiated action, since the principle at stake, parental rights, was equally valuable regardless of the identity of the adversary.

Society, through its legislature, has determined that expedited protection of victims of domestic violence is of primary concern, and through the Domestic Violence Act has provided a speedy procedural means for victims to obtain relief. The risk of fact-finding error in the case at hand is less likely than where actual termination of parental rights is concerned. This is a given due to the relatively short duration of any court order restricting contact by a parent. The protection order at issue before this Court *temporarily modified* William's custody rights; it did not terminate either his parental rights or his custody rights. The greater risk of error actually falls on the alleged victim of abuse who is requesting immediate relief.

In addition to the differing weight of the competing interests at stake in the termination versus the temporary restriction situation, the paramount consideration in any dispute involving custody of a minor child is the child's best interests. *Stockwell v. Stockwell,* 116 Idaho 297, 775 P.2d 611 (1989); *Shumway v. Shumway,* 106 Idaho 415, 679 P.2d 1133 (1984). The standard guiding a trial court in both an initial custody award of minor children and a modification of a custody award is the same: the decision rests within the sound discretion of the trial court and will not be disturbed on appeal *if the evidence is sufficient to support a finding* that the welfare and interests of the children will be best served by changing their custody. *Koester v. Koester,* 99 Idaho 654, 586 P.2d 1370 (Ct. App.1984); *Overman v. Overman,* 102 Idaho 235, 629 P.2d 127 (1980).

"Sufficiency of the evidence" is not indicative of a clear and convincing standard but rather of preponderance of the evidence. In the present situation, the custody restriction is limited to no more than

**506**

ninety days in duration; in fact, a permanent change in custody is not obtainable under the Domestic Violence Act. Considering the need for prompt relief, and the fact that the preponderance of the evidence standard is adequate in instances of permanent alteration of custody rights, the preponderance of the evidence is certainly a sufficiently demanding standard to protect the due process rights of a respondent in a case of short-term custody restriction. William was given notice of the hearing, and was represented by counsel. In any event, it appears that the court intended to apply a "clear and convincing" standard as evidenced by Judge Harden's spoken words, "In all probability, and certainly the clear weight of the evidence is, that you did this and I would so find."

### III. THE COURT'S FACTUAL FINDINGS

■ The third issue William raises on appeal is whether the trial court's findings of fact were clearly erroneous. When this Court reviews a trial court's findings of fact, the guiding standard is whether the findings are clearly erroneous; that is, whether they are supported by substantial, competent evidence. I.R.C.P. 52(a); *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 794 P.2d 1389 (1990). This is so even if there is some evidence which is conflicting. *Id.* The evidence presented by the parties at the September 18, 1989, protection order proceeding in front of Judge Harden may be summarized:

Lucille testified that William returned Tolen and Elizabeth to her home in Sandpoint, Idaho, at approximately 9:00 p.m. on August 11, 1989, after having had them since August 5, 1989. Twenty minutes after their return, she noticed bruises on her son Tolen's "bottom" and "hip area," and immediately phoned Dr. James Weber. She also took photographs of the bruised area. Tolen told her that "Daddy" had given him the bruises.

Dr. James Weber testified that Lucille phoned him on the evening of August 11, to inform him of Tolen's bruises, and the next morning, August 12, he examined Tolen. Dr. Weber observed nine bruises on Tolen's left thigh and buttock that, with reasonable medical certainty, appeared to be approximately 48 hours old. According to Dr. Weber, the bruises were consistent with a severe spanking, were likely inflicted with something round such as a belt buckle, and were not consistent with an accidental fall from a jungle gym, as William alleged. On cross-examination, he stated that the bruises could have occurred as recently as ten to twelve hours prior to his evaluation. Also on cross-examination, Dr. Weber stated that it was possible that the bruises could have occurred "from some force other than a spanking."

Janet Boden, a Child Protection Social Worker for the Idaho Department of Health and Welfare, testified that when she questioned Tolen about how he received the bruises, he replied, "Daddy whammed me."

William testified that he did not spank Tolen during his stay other than giving him a "swat" or "pat" on the butt, and upon nightly examination of the children, he observed only a slight bruise on Tolen, which he believed had probably occurred during play.

Jovena Gordon, William's girlfriend at the time of Tolen's visit, testified that she was either with Tolen, or within "earshot" of him almost constantly during the visitation week and never heard Tolen yell or cry. She also testified that a spanking episode William testified to was indeed a "tap on the seat," and when Tolen left to return home to his mother, he gave no indication of being in pain.

William had additional witnesses testify that he was, if anything, too lenient in punishing his children, and minutes before returning to his mother's home, Tolen was playing rough and not complaining of any pain in his buttocks or thighs.

Based upon the foregoing evidence, Judge Harden found that the evidence did not support a finding that Tolen's injuries had been inflicted by Lucille, but rather by William. He also found that the injuries

were not consistent with William's explanation that they had occurred while Tolen was at play, but were consistent with a severe spanking. The credibility and weight to be given evidence is in the province of the trier of fact. *Pointner v. Johnson,* 107 Idaho 1014, 695 P.2d 399 (1985). Judge Harden had the best opportunity to assess witness demeanor, and we will not substitute our opinion of witness credibility for that of the trial court. *Rueth v. State,* 103 Idaho 74, 644 P.2d 1333 (1982).

Because substantial and competent evidence supports the lower court's factual findings, they are not clearly erroneous and we will not disturb them.

### IV. ATTORNEY FEES

Lucille requests attorney fees on appeal pursuant I.C. § 12–121 and I.A.R. 41. In order to grant such an award, this Court must be left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably or without foundation. *Excel Leasing Co. v. Christensen,* 115 Idaho 708, 769 P.2d 585 (Ct.App.1989). We find that William's appeal was not brought frivolously, unreasonably or without foundation as his appeal asserted legitimate issues surrounding the construction of the Domestic Violence Act. *See Ashe v. Hurt,* 114 Idaho 70, 753 P.2d 281 (Ct.App. 1988), *aff'd,* 117 Idaho 266, 787 P.2d 252 (1990). Therefore, no attorney fees are awarded on appeal.

### V. CONCLUSION

We hold that the Domestic Violence Crime Prevention Act was a proper vehicle for petitioner Lucille Ellibee to obtain a temporary protection order in favor of her minor children, regardless of the fact that William Ellibee had joint legal custody of the children. We also hold that the required standard of proof in protection order proceedings under the Domestic Violence Act is the preponderance of the evidence, and the trial court's factual findings were not clearly erroneous. In so holding, we affirm the issuance of the ninety-day protection order against William Ellibee.

Costs on appeal to petitioner-respondent Lucille Ellibee.

BAKES, C.J., and JOHNSON, BOYLE and McDEVITT, JJ., concur.