**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 39975**

| | | |
|---|---|---|
| RITA JANE TURNER, | ) | |
| | ) | |
| Petitioner-Respondent, | ) | **Twin Falls, November 2013 Term** |
| | ) | |
| v. | ) | **2013 Opinion No. 139** |
| | ) | |
| ROBERT A. TURNER, | ) | **Filed: December 18, 2013** |
| | ) | |
| Respondent-Appellant. | ) | **Stephen W. Kenyon, Clerk** |
| _____ | ) . | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Hon. R. Ted Israel, Magistrate Judge. Hon. Robert J. Elgee, District Judge.

The decision of the district court is <u>affirmed.</u>

Werth Law Office, PLLC, Hailey, for appellant. Douglas A. Werth argued.

Idaho Legal Aid Services, Inc., Twin Falls, for respondent. Michael F. McCarthy argued.

Idaho Coalition Against Sexual & Domestic Violence, Boise, as amicus curiae. Annie-Noelle Kerrick argued.

_____

J. JONES, Justice.

In 2011, Rita Turner petitioned the magistrate court for a protection order for her and her son against her then-husband Robert Turner. The magistrate court entered a 90-day order under the Idaho Domestic Violence Prevention Act, finding that there was reasonable cause to believe that bodily harm might result to Rita and her son. Robert appealed to the district court, which affirmed the magistrate court's decision. Robert filed a timely appeal.

**I.**
**FACTUAL AND PROCEDURAL HISTORY**

Robert and Rita Turner, a then-married couple, separated on June 22, 2011. On August 3, 2011, Robert went to Rita's house to retrieve some fence posts and damaged her fence in the

1

process. After she called him to discuss these events, Robert came to her workplace and told her to "give him some keys" or else he would destroy her property with heavy equipment.

On August 4, 2011, Rita filed a Petition for Protection Order for herself and her son against Robert. In this petition, Rita cited an instance when Robert struck her son on the head, stated that Robert has attempted suicide, and claimed that Robert has entered her house when her children were there alone.

On the same day that Rita filed her petition, the magistrate court issued an ex parte temporary protection order, which was set to expire on August 16, 2011, and scheduled a hearing on the order for August 16, 2011. After a continuance, the magistrate court held an evidentiary hearing on September 7, 2011, at which both parties appeared and were represented by counsel. The magistrate court found that cause existed and entered a 90-day protection order, which expired on December 7, 2011. The terms of the 90-day protection order were modified from the terms of the ex parte order to allow Robert to go as close as 100 feet to Rita's place of employment, but no closer. The magistrate court entered this modification because Robert's place of employment and the grocery store were within 200 feet of Rita's place of employment, and the modification was intended to allow Robert to continue to work and go to the grocery store.

Robert appealed the magistrate court's decision to the district court. The district court held oral argument on April 2, 2012 and on April 5, 2012, entered its order affirming the magistrate court's decision. Robert timely appealed to this Court.

## II.
## ISSUES

1. Whether Idaho courts should apply a clear and convincing evidentiary standard in domestic violence protection order cases?
2. Whether the magistrate court's factual findings were clearly erroneous?
3. Whether either party to the appeal should be awarded costs and attorney fees?

## III.
## STANDARD OF REVIEW

When this Court reviews the decision of a district court sitting in its capacity as an appellate court, the standard of review is as follows:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012) (quoting *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008)). Thus, this Court does not review the decision of the magistrate court. *Id.* "Rather, we are 'procedurally bound to affirm or reverse the decisions of the district court.'" *Id.* (quoting *State v. Korn*, 148 Idaho 413, 415 n. 1, 224 P.3d 480, 482 n. 1 (2009)).

> Prior to *Losser*, when this Court reviewed a district court acting in its appellate capacity the standard of review was: "when reviewing a decision of the district court acting in its appellate capacity, this Court will review the record and the magistrate court's decision independently of, but with due regard for, the district court's decision." *Losser*, 145 Idaho at 672, 183 P.3d at 760. After *Losser*, this Court does not directly review a magistrate court's decision. *Id.* Rather, it is bound to affirm or reverse the district court's decision. *See Bailey*, 153 Idaho at 529, 284 P.3d at 973; *Korn*, 148 Idaho at 415 n. 1, 224 P.3d at 482 n. 1.

*Pelayo v. Pelayo*, 154 Idaho 855, 858–59, 303 P.3d 214, 217–18 (2013).

Like the parties in *Pelayo*, both Robert and Rita "have misstated the standard of review that this Court applies to appeals from the district court acting in its appellate capacity." *Id.* at 859, 303 P.3d 218.

> Both parties' arguments on appeal ask this court to directly review the decisions of the "trial court," which was the magistrate court in this case. This presents a potential problem because under *Losser* we are procedurally bound to focus our review on the decision of the district court. However, since the issues raised on appeal are primarily based on factual determinations made by the magistrate court and because under *Losser* we still review the magistrate record to determine whether substantial, competent evidence supports the challenged factual determinations of the magistrate, we will proceed to consider the appeal. Litigants who fail to properly comprehend the standard of review for an appeal from the district court should not assume that this will always be the case.

*Id.* A question of evidentiary standards is a question of law over which this Court exercises free review. *Ellibee v. Ellibee*, 121 Idaho 501, 505, 826 P.2d 462, 466 (1992).

**IV.**
**ANALYSIS**

Under the Idaho Domestic Violence Crime Prevention Act ("DVCPA"), Idaho courts may issue civil protection orders to protect victims and potential victims of domestic violence from harm. I.C. §§ 39-6301–6317. To obtain a protection order, a petitioner may file a petition with the magistrate court. I.C. § 39-6304(2). If the petition "alleges that irreparable injury could result from domestic violence if an order is not issued immediately without prior notice to the respondent, the court may grant an ex parte temporary protection order . . . ." I.C. § 39-6308(1). "A full hearing . . . shall be set for not later than fourteen (14) days from the issuance of the temporary order." I.C. § 39-6308(5).

At the evidentiary hearing, if the petitioner makes a showing by a preponderance of the evidence "that there is an immediate and present danger of domestic violence to the petitioner, the court may" issue a protection order "for a period not to exceed one (1) year . . . ." I.C. § 39-6306(1); *Ellibee*, 121 Idaho at 506, 826 P.2d at 467. "Immediate and present danger . . . includes, but is not limited to, situations in which the respondent has recently threatened the petitioner with bodily harm or engaged in domestic violence against the petitioner or where there is reasonable cause to believe bodily harm may result." I.C. § 39-6306(2).

The DVCPA provides that a magistrate court may set "relief granted by the protection order . . . for a fixed period not to exceed one (1) year . . . ." I.C. § 39-6306(5). An order may, however, "upon motion and upon good cause shown, continue for an appropriate time period" or even "be made permanent . . . if the requirements of this chapter are met, provided the order may be terminated or modified by further order of the court either on written stipulation filed with the court or on the motion of a party and after a hearing on the motion." I.C. § 39-6306(5).

### A. The burden of proof under the DVCPA is preponderance of the evidence.

This Court has held that a preponderance of the evidence standard in DVCPA protection order cases appropriately balances the risk of harm to petitioners with the restrictions on respondents. *Ellibee*, 121 Idaho at 506, 826 P.2d at 467. Here, Robert asks the Court to revisit *Ellibee*, but we decline to disturb it. In *Ellibee*, the appellant had been subject to a protection order under the DVCPA that restrained him from having any contact with his children. *Id.* at 502, 826 P.2d at 463. He argued that "the required standard of proof in the trial court should have been 'clear and convincing evidence' because his fundamental liberty interest as a natural parent was being circumscribed." *Id.* at 505, 826 P.2d at 466. Rejecting that argument, the Court

noted that a "standard of proof reflects the weight ascribed to competing interests, and it embodies a societal judgment about how the risk of fact-finding error should be allocated." *Id.* We explained that "[s]ociety, through its legislature, has determined that expedited protection of victims of domestic violence is of primary concern, and through the Domestic Violence Act has provided a speedy procedural means for victims to obtain relief." *Id.* Because a respondent's rights are only temporarily affected, the "greater risk of error actually falls on the alleged victim of abuse who is requesting immediate relief." *Id.* The Court held that "[c]onsidering the need for prompt relief, and the fact that the preponderance of the evidence standard is adequate in instances of permanent alteration of custody rights, the preponderance of the evidence is certainly a sufficiently demanding standard to protect the due process rights of a respondent in a case of short-term custody restriction." *Id.* at 506, 826 P.2d at 467.

In support of his position that the Court should overturn *Ellibee* and increase the burden of proof for obtaining a protection order, Robert makes two primary arguments. First, Robert contends that protection orders are now available for a greater length of time than they were when *Ellibee* was decided, which erodes the "underlying rationale" for *Ellibee*. Second, Robert argues that the preponderance of the evidence standard violates his Second Amendment rights.[1]

### 1. Robert has failed to make a cogent argument for overturning the burden of proof established in *Ellibee*.

When the Court decided *Ellibee* in 1992, trial courts could issue domestic violence civil protection orders under the DVCPA for a period not to exceed three months "upon a showing that there is immediate and present danger of domestic violence to the petitioner." 1991 Sess. Laws, ch. 300, § 1, p. 787. At that time, the DVCPA allowed trial courts to renew a protection order for an additional year. *Id.* at p. 788. The statute neither explicitly limited the amount of times a court could renew an order nor explicitly allowed for indefinite renewals. Thus, when *Ellibee* was decided, the custody restriction through a protective order was "limited to no more

---

[1] Robert additionally states that "a protection order effects significant restrictions upon liberty interests protected by the Fourteenth Amendment to the United States Constitution." Because Robert fails to elaborate on this statement or even identify the interests to which he refers, the Court need not consider his argument. *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006) (holding that this Court "will not consider assignments of error not supported by argument and authority in the opening brief").

than ninety days in duration; in fact, a permanent change in custody [was] not obtainable under the Domestic Violence Act." 121 Idaho at 505–06, 826 P.2d at 466–67.

Later, in 1995, the DVCPA was amended to allow for a three month protection order to "be renewed for additional terms not to exceed one year each . . . ." DVCPA, ch. 357, § 1, p. 1213 (1995). Now, after additional amendments to the DVCPA, trial courts may initially issue domestic violence protection orders for a period not to exceed one year. I.C. § 39-6306. After issuing the initial order, a trial court may continue the order "for an appropriate time period" or even make the order permanent. I.C. § 39-6306(5). Thus, under the current DVCPA a court could theoretically issue a protection order for an unlimited length of time.

Robert argues that because "protection orders [are] potentially infinite in duration," the preponderance of the evidence standard in protection order hearings is no longer appropriate. Robert provides no authority to support his assertion that *Ellibee* should be overturned on this basis. Although it certainly appears that the DVCPA has been amended to allow protection orders to stand for a greater length of time than they could when *Ellibee* was decided, Robert provides only sparse argument and fails to provide any authority to support his assertion that these amendments require a change in the burden of proof. We will not consider claims that are not supported by relevant argument and authority. *See Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010).

2. **That the Domestic Violence Offender Gun Ban interacts with a protection order to temporarily restrict a respondent's Second Amendment rights does not warrant an increase in the burden of proof under the DVCPA.**

In 1996, after *Ellibee* was decided, Congress enacted the Domestic Violence Offender Gun Ban, which provides

(g) It shall be unlawful for any person—

    (8) who is subject to a court order that—

        (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

        (B) restrains such persons from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would

place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . . .

to . . . possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(8).

In his brief, Robert argues that a higher evidentiary standard than the one applied in *Ellibee* is now required to obtain a DVCPA protection order because under 18 U.S.C. § 922, "the issuance of a state protection order automatically triggers a complete abolishment of the respondent's constitutional right to bear arms under the Second Amendment to the United States Constitution."

As admitted by Robert's counsel in oral argument, however, 18 U.S.C. § 922 did not trigger a "complete abolishment" of Robert's Second Amendment rights, because the statute applied to Robert only while he was subject to the protection order. Indeed, 18 U.S.C. § 922(g) specifically applies to a person "who is subject to a court order." The word "is" implies that 18 U.S.C. § 922(g) applies only to a respondent currently constrained by a protection order. Thus, the restriction 18 U.S.C. § 922 places on a respondent's Second Amendment rights is only temporary.

This Court has already considered the required standard of proof when a fundamental liberty interest is circumscribed by a protection order. *Ellibee*, 121 Idaho at 505, 826 P.2d at 466. The protection order at issue in *Ellibee* temporarily modified, but did not terminate, the appellant's parental custody rights. *Id.* Because of the "relatively short duration of any court order restricting contact by a parent," the Court held that a preponderance of the evidence standard was appropriate as the "risk of fact-finding error in the case at hand is less likely than where actual termination of parental rights is concerned." *Id.*

7

Like the appellant in *Ellibee*, Robert was subject to a protection order of "relatively short duration" that "temporarily modified" but did not "terminate" his constitutionally protected rights. Robert provides no argument to explain why a temporary restriction on his Second Amendment rights is different from a temporary restriction of parental rights and necessitates an increased burden of proof. Thus, we decline to increase the burden of proof on these grounds.

### B. The district court properly affirmed the magistrate court's findings of fact.

Robert argues that even if the burden of proof is constitutional, the magistrate court's findings of fact were clearly erroneous. Nonetheless, the district court properly affirmed the magistrate's findings of fact because the findings were supported by substantial, competent evidence. Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *Jensen v. City of Pocatello*, 135 Idaho 406, 409, 18 P.3d 211, 214 (2000).

The following is a summary of the evidence presented by the parties at the September 17, 2011 protection order proceeding. Rita testified that Robert is a "very angry person, very volatile," who had abused "[m]eth and alcohol." She stated that on June 11, 2010, a year before the hearing, Robert "got very angry and hit [Rita's son] in the head." Robert struck Rita's son, who is autistic, after they had been "horsing around."

Rita also testified that Robert had attempted suicide "four times within the last year." During one of these attempts, Robert stated that "he was going to shoot himself," but Rita did not actually see him with a gun. Rita stated that Robert came into her room, woke her up, and told her that "he was going to kill himself and had called Canyon View, and that if [she] didn't take him down there within, like, three hours, that they were going to come and get him." Robert was admitted to Canyon View and while there, "cut himself up with a plastic shampoo bottle."

Rita stated that there have been "many times" when Robert had come to her work to "argue" and "fight" with her. She described one incident when Robert left her work "very angry" and "tore up" their pickup truck and the truck of one of her employer's customers. These events scared Rita.

In June of 2011, Robert came to Rita's house, but her children refused to let him in because she was not home. Because "the boys wouldn't answer the door . . . he walked right in with the boys there." Rita testified that because of her autistic son's fear of Robert, she changed

8

the lock on the front door and that she or the boys "pulled the dryer out in front of the back door at night." On August 3, 2011, Robert climbed over Rita's backyard fence, breaking it, so that he could remove some fence posts. Rita filed for a protection order the next day.

Relying on Idaho Code sections 39-6306(1) and (2), Robert argues that Rita failed to meet her burden of proof because she "did not articulate a single recent threat of bodily harm or recent act of domestic violence." Robert contends that the DVPA requires a showing of objectively threatening behavior by the respondent, and simply "does not allow for a protection order whenever a household member has a subjective fear." Rather, he urges that the "touchstone established by the legislature is either 'a threat of bodily harm' or 'an act of domestic violence' that is recent, and creates an immediate and present danger." He contends that all Rita "could say is that [he] threated to damage property and because he was upset she was 'scared.'"

Robert simply ignores the final clause of § 39-6306(2). This clause specifically defines immediate and present danger as including those situations where there is reasonable cause to believe that the respondent may cause bodily harm to the petitioner. I.C. § 39-6306(2). Thus, the magistrate court acted within its authority if it found that Rita showed there was reasonable cause to believe that Robert might cause bodily harm to her and her son.

The magistrate recognized that the decision of whether to issue a protective order in this case was "a fairly close call because some of these incidents are somewhat remote in time . . . ." Nonetheless, the magistrate looked "at the totality of the circumstances" and determined that Robert's conduct "under the circumstances justifie[d] a conclusion" that Rita had a reasonable belief that she was "in some sort of immediate threat of harm."

Specifically, based on the evidence discussed above, the magistrate found that the incident where Robert slapped Rita's son "sound[ed] like an incident where Robert lost his temper, which was certainly inappropriate under the circumstances, but there's no real indication . . . that it resulted in any physical injury to the child." The magistrate stated that "the most disconcerting incident" was the "allegation that [Robert] came to [Rita's] work angry and then went outside and ran into some vehicles." The magistrate wondered "[w]hat person in their right mind gets into an argument with someone and then goes outside and runs into others' vehicles? Only dangerous people do things like that. . . . And just because [Robert had not] done something equally dangerous for a year doesn't mean that [he is] not dangerous."

9

Furthermore, the magistrate stated that Robert's threats of suicide and threat of going to Canyon View all indicated he was "a threat to commit recent and current domestic violence. Just because [he] didn't threaten someone yesterday doesn't mean that [he isn't] dangerous." Speaking to Robert, the magistrate court stated:

> Your inability to understand the importance of your actions, your inability to understand that if there's a fence there, you don't have the right to climb over it whether or not you think there's stuff of yours inside of it to me is another indication of the fact that you are, in fact, a threat and these people have reason to be scared of you.

Based on the testimony presented at the hearing and the magistrate's reasoning, it appears that the magistrate's findings were not in clear error. Under this Court's deferential review, the evidence must be liberally construed in favor of the judgment entered. The magistrate observed Robert testifying in open court and took the opportunity to question Robert in an exchange that extended over five pages of the transcript, which gave the magistrate a feel for Robert's credibility and demeanor. Here, the magistrate weighed the competing evidence and provided a detailed explanation of its findings. Although the evidence did not reveal that Robert made an overt threat to cause bodily harm to Rita or her child, the testimony of both Rita and Robert suggests that Robert could indeed act unpredictably and in a potentially dangerous manner. This testimony was relevant to a determination of whether Robert constituted a threat to Rita and her son's bodily safety. Because the magistrate's findings were consistent with evidence that appears substantial and competent, they were not clearly erroneous and we therefore affirm the district court's decision.

### C. Rita is entitled to an award of attorney fees.

Under Idaho Code § 12–121, the Court may award "reasonable attorney's fees to the prevailing party . . . ." The Court will award fees if it "determines that the action was brought or pursued frivolously, unreasonably or without foundation." *Baker v. Sullivan,* 132 Idaho 746, 751, 979 P.2d 619, 624 (1999). When an appellant fails to present a cogent argument as to why he should prevail, an award to his opponent is appropriate. *Chicoine v. Bignall*, 127 Idaho 225, 228, 899 P.2d 438, 441 (1995). Likewise, an award of attorney fees under this statute is appropriate if the appeal simply invites this Court "to second-guess the trial court on conflicting evidence." *Hogg,* 142 Idaho at 559, 130 P.3d at 1097.

In his opening brief, Robert states that he should be awarded attorney fees because "the appeal has been defended frivolously, unreasonably and without foundation." He makes no additional argument on the issue. Rita counters that she is entitled to attorney fees because Robert brought this appeal frivolously, unreasonably, or without foundation. Rita maintains that Robert failed to cite any authority and made only a superficial argument in support of his position regarding burdens of proof for protection orders. Furthermore, as to Robert's argument that the magistrate court entered the protection order in error, Rita contends that Robert failed to point to any erroneous findings or any errors in the court's application of law.

Throughout his brief, Robert failed to develop an argument as to any of the issues he presented and offered little by way of citation to authority. Furthermore, in arguing that the magistrate court erred in its findings of fact, Robert did not identify any factual errors and disregarded the final clause of § 39-6306(2), even though that clause was precisely the ground upon which the magistrate court entered and the district court affirmed the protection order. In fact, on appeal in the district court, the judge noted that Robert's counsel "hammers at immediate and present danger," yet ignored the "third prong of the statute"—the final clause of § 39-6306(2)—which relates to entering a protection order on the grounds of reasonable cause to believe that bodily harm may result. Thus, because this clause had been specifically pointed out by the district court, it cannot be said that Robert's ignorance was an oversight—there was no basis for continually failing to consider the entirety of the statute. Because Robert failed to develop an argument, offered scarce citation to authority, and ignored the aspects of the law unfavorable to him, he has brought this appeal frivolously, unreasonably, or without foundation. As a result, we award Rita her attorney fees.

## V.
## CONCLUSION

The decision of the district court is affirmed. Rita is awarded her attorney fees and costs on appeal.

Chief Justice BURDICK, and Justices EISMANN, HORTON and Justice Pro Tem SCHROEDER CONCUR.