**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 43774**

| | | |
|---|---|---|
| JANE DOE (2016-1), | ) | |
| | ) | **Boise, May 2016 Term** |
| Petitioner-Respondent, | ) | |
| | ) | **2016 Opinion No. 104** |
| v. | ) | |
| | ) | **Filed: September 15, 2016** |
| JOHN DOE, | ) | |
| | ) | **Stephen Kenyon, Clerk** |
| Respondent-Appellant. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Andrew Ellis, Magistrate Judge.

The order of the magistrate court is <u>affirmed</u>.

Eismann Law Offices, Nampa, for appellant. Debra L. Eismann argued.

Jane Doe, Meridian, pro se respondent.

_____

HORTON, Justice.

John Doe was involved in a physical altercation with his sixteen year old daughter, C.G., resulting in C.G. sustaining a concussion and cervical strain. The magistrate court entered a civil protection order, which it subsequently modified. John Doe appeals from these orders. John Doe argues that the magistrate court erred when it determined that there was an "immediate and present danger of domestic violence" warranting issuance of the protection order and that the court abused its discretion when it specified that the protection order would be in effect for a year. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

John Doe and Jane Doe are the father and mother of C.G., a child born in 1999, and share joint legal and physical custody of C.G. The parties' briefing before this Court present markedly different accounts of the events of August 22, 2015, which resulted in the issuance of a protection order ("the incident"). Our description of the incident is primarily based on the

evidence presented to the magistrate judge in the form of medical records, a report of a child protection investigation[1] and John Doe's testimony.

There was significant conflict between John Doe and Jane Doe regarding custody and visitation issues regarding C.G. both before and after a three-day custody trial in January of 2015. That trial resulted in John Doe receiving visitation with C.G. on alternating weekends and extended visitation over certain holidays and during the summer. Before the incident, C.G. had been exhibiting troubling symptomatology, including self-harm by cutting herself, anger, and depression, which culminated with her running away from her mother's home the week before the incident. In the child protection investigator's view, C.G.'s difficulties appeared "to be in direct correlation to the ongoing tension between her parents."

On August 22, 2015, C.G. was visiting her father's home. John Doe, his wife and C.G. attended a rodeo. Over the course of the day tension developed between C.G. and John Doe. C.G. reported to her mother that John Doe had been drinking. The Doe family returned home after 11 p.m. C.G. was upset upon their return and went outside to telephone her mother. When she returned inside, John Doe attempted to speak with her, but C.G. refused to speak with him and went to her room. Around 11:30 p.m., John Doe went into C.G.'s room to talk with her about why she was upset. Apparently still unwilling to speak with John Doe, C.G. put earbuds in her ears, turned up the volume of the music playing on her cell phone, and rolled over on her bed, turning her back to John Doe.

John Doe had imposed restrictions on C.G.'s cell phone use in his home, and C.G. was required to turn her cell phone off and put it away at bedtime. John Doe removed the earbuds from C.G.'s ears and told her that she needed to put the cell phone away and go to bed. C.G. responded with a curse ("F*** you"). John Doe then snatched the cell phone from her. C.G. attempted to wrestle it back which resulted in a physical altercation. C.G. bit John Doe twice. John Doe told C.G. that if she kept biting him he would "smack" her. C.G. continued biting him and John Doe "smacked her a couple of times" to cause her to stop biting him.

John Doe's wife entered the room and took the phone, agitating C.G. further. John Doe then attempted to hold onto C.G., explaining that he did so because he was concerned that C.G.

---

[1] This report was prepared in response to an order from the magistrate court. The report indicates that the incident resulted in three distinct referrals to child protection authorities. At least one of these referrals was from St. Luke's Meridian Medical Center Emergency Department. C.G.'s treating physician believed that "the nature of the mechanism of [C.G.'s] injury" warranted reports to child protection and law enforcement authorities.

2

might run away because she was angry. John Doe's attempts to restrain her prompted C.G. to bite him again. He "smacked her again" and she ceased biting him. John Doe testified that he never became angry or lost his temper during the incident.

C.G. called Jane Doe afterwards to report that John Doe "had smacked her in the head." The next morning, C.G. did not feel well and Jane Doe asked John Doe to take C.G. to the emergency room, which he did. The examining physician concluded that C.G. "suffered concussion and cervical strain."

On August 25, 2015, Jane Doe filed a petition for a protection order on behalf of C.G., seeking protection from John Doe. On August 26, 2015, the magistrate court issued a temporary ex parte protection order and issued an order for a child protection investigation.

On September 9, 2015, the magistrate court held a hearing on the protection order. The magistrate judge interviewed C.G. outside of her parents' presence, but did not discuss the incident with her. Rather, the magistrate judge inquired as to C.G.'s wishes regarding the issuance of a protection order and her views as to her future relationship with her father. At the conclusion of the hearing, the magistrate court found that the preponderance of the evidence established an immediate and present danger of domestic violence and entered a protection order prohibiting all contact between John Doe and C.G. for one year.

On September 23, 2015, John Doe filed a motion for reconsideration or in the alternative a motion to modify the protection order. On October 9, 2015, the magistrate court held a hearing on John Doe's motion. The magistrate court denied John Doe's motion for reconsideration and modified the protection order to permit unlimited telephone phone contact between John Doe and C.G. and attendance and participation in a parenting class. On December 2, 2015, the magistrate court granted John Doe's motion for permissive appeal to this Court, which this Court accepted. John Doe then filed a timely notice of appeal.

## II. STANDARD OF REVIEW

"This is a permissive appeal under [I.A.R.] 12.1, and as such, the Court reviews the magistrate judge's decision without the benefit of a district court appellate decision." *Lamont v. Lamont*, 158 Idaho 353, 356, 347 P.3d 645, 648 (2015) (bracketing in original). "When reviewing the trial court's findings of fact, the appellate court will not set aside the findings on appeal unless they are clearly erroneous such that they are not based upon substantial and competent evidence." *Nelson v. Nelson*, 144 Idaho 710, 713, 170 P.3d 375, 378 (2007). "When

reviewing the trial court's conclusions of law, however, this Court exercises free review of the court's decision to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found." *Id.*

The duration of a protection order under Idaho Code section 39-6306 is committed to the sound discretion of the trial court. I.C. 39-6306(1) (the court "may" enter an order "for a period not to exceed one (1) year"). A trial court does not abuse its discretion "so long as it recognizes the issue as one of discretion; acts within the outer limits of its discretion and consistently with the legal standards applicable to the available choices, and reaches its decision through an exercise of reason." *Roberts v. Roberts*, 138 Idaho 401, 403, 64 P.3d 327, 329 (2003).

### III. ANALYSIS

John Doe contends that the magistrate court erred when it determined that there was an "immediate and present danger of domestic violence" warranting issuance of a protection order for a one year period. We disagree.

**A. The magistrate court did not err when it found an "immediate and present danger of domestic violence" and issued a protection order for a one year period.**

The magistrate court determined that there was an immediate and present danger of domestic violence to C.G. and issued a protection order for a one year period. The magistrate court reasoned:

> The law that governs the issuance of a protection order under a domestic violence case is found in Title 39, Chapter 63 of the Idaho Code. For a protection order to issue, the protection order must show by a preponderance of the evidence that there is an immediate and present danger of domestic violence.
>
> Preponderance of the evidence . . . is an evidentiary standard that says it is more likely than not. This is not beyond a reasonable doubt. This is the 51 percent rule, is the Court convinced by a more likely than not that there is an immediate present danger of domestic violence.
>
> Immediate and present danger includes, but is not limited to, situations in which the respondent, in this case [John Doe], has recently threatened the petitioner, in this case the minor child, with bodily harm. Engaged in domestic violence whether it is reasonable cause to believe bodily harm may result.
>
> Domestic violence is defined as a physical injury, sexual abuse, forced imprisonment or threat thereof.
>
> Making a decision in this regard is well within the Court's discretion. And I appreciate and understand that it is a discretionary call and I am exercising that discretion. I have viewed and listened to witnesses and judged their credibility and make my decision based on the information.

4

During the hearing on John Doe's motion for reconsideration, the magistrate court expanded on its earlier statements:

> I believe implicit in my findings that there was an immediate and present danger of domestic violence to [C.G.] but I will at this time, because I suspect we will be discussing the appeal, amend my findings to make it explicit that based on the evidence that was presented on the hearing of September 9th there was immediate and present danger of domestic violence to [C.G.] by [John Doe] that warranted the issue of protection order for 12 months.

In this appeal John Doe argues that his use of force was not domestic violence, and there was no evidence of a threat of future domestic violence. John Doe contends that parents have an affirmative duty to control and discipline their children. Further, John Doe contends that he had a right to defend himself against physical injury after C.G. began biting him during the physical altercation. John Doe claims that his belief that force was necessary in order to get C.G. to stop biting him was reasonable based on the circumstances, and he did not use more force than was reasonably necessary. Finally, John Doe contends that "[a] parent may use corporal punishment as a method of discipline without violating the domestic violence statute as long as the discipline is proper and reasonable under the circumstances."

At the outset we acknowledge the legal theories John Doe has presented. We do not question the application of these theories in civil protection order proceedings. However, a trial judge is entitled to determine whether the evidence before him or her supports application of these legal principles when deciding whether a protection order should be issued. The record reflects that the magistrate court considered and rejected John Doe's claims.

The magistrate court concluded that John Doe was not under an affirmative duty to control or discipline C.G., stating: "I view the facts of this case differently and I do not believe that there was any parental duty on your part, [John Doe], that night to exercise the kind of discipline that you did." The record likewise shows the magistrate court specifically considered and rejected John Doe's claim that he was acting in self-defense when he struck C.G. Finally, the magistrate court concluded that the force John Doe used was not reasonable under the circumstances:

> It is, I think, common knowledge that to strike a human being with enough force to cause a concussion you actually have to hit them hard enough for their brain to slam into their skull. And so the fact that you hit this child with enough force to cause a concussion cannot be minimized. And the force to ultimately engage in actions that resulted in concussing your child, I cannot find are

proportionate to the behavior, which was to turn a cold shoulder and to swear at you.

Taking the full record into account, we can find no error by the magistrate court. This Court is not free to re-weigh the evidence before the magistrate court, and we did not have the opportunity to observe John Doe when he testified that he repeatedly "smacked" C.G. in the head without anger, despite having been repeatedly bitten. Rather, the record is clear that the magistrate considered all of the facts regarding the incident before reaching its decision.

John Doe also asserts that the "immediate and present danger of domestic violence," which Idaho Code section 39-6306(1) establishes as a prerequisite to issuance of a protection order, "contemplates that the court must find a risk of future harm that is in the form of domestic violence." John Doe's assertion is wrong.

Idaho Code section 39-6306(2) provides: "Immediate and present danger under this section includes, but is not limited to, situations in which the respondent *has recently* threatened the petitioner with bodily harm or *engaged in domestic violence against the petitioner* or where there is reasonable cause to believe bodily harm may result." I.C. § 39-6303(2). The plain language of the statute defines "immediate and present danger of domestic violence" to include acts of recent domestic violence. For purposes of the Domestic Violence Crime Prevention Act, which authorizes the issuance of protection orders, "domestic violence" is defined to include inflicting "physical injury." I.C. § 39-6303(1). There is no contention that C.G.'s concussion and cervical strain were not physical injuries or that the incident was not recent. The magistrate court's finding of "immediate and present danger of domestic violence" was not erroneous.

**B. John Doe has not demonstrated that the magistrate court abused its discretion by ordering that the protection order would be in effect for one year.**

John Doe argues that entering "a protection order for one year with only telephone contact is an abuse of discretion and is not intended as a modification of child custody." John Doe contends that the magistrate court abused its discretion when it interviewed C.G. to determine C.G.'s wishes concerning her contact with John Doe. John Doe argues that, "[t]he court in a civil DVPO case should not be in the position of deciding custody contrary to the analysis in *Ellibee v. Ellibee*, 121 Idaho 501, 504, 826 P.2d 462, 465 (1992). Civil protection order cases are expedited hearings that are short in length and are not intended to make child custody determinations. The father would request a change in law as it relates to this issue."

6

John Doe evidently contends that we should modify our holding in *Ellibee* that a magistrate court may enter domestic violence protection orders which temporarily affect a parent's child custody or visitation rights. *Id.* "When there is controlling precedent on questions of Idaho law the rule of stare decisis dictates that we follow it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Asbury Park, LLC v. Greenbriar Estate Homeowners' Ass'n, Inc.*, 152 Idaho 338, 343, 271 P.3d 1194, 1199 (2012) (quoting *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 592, 130 P.3d 1127, 1130 (2006)). John Doe has not identified the manner in which our decision in *Ellibee* is manifestly wrong, unjust or unwise, or otherwise contrary to plain and obvious principles of law. "This Court will not consider an argument not supported by cogent argument or authority." *City of Meridian v. Petra Inc.*, 154 Idaho 425, 450, 299 P.3d 232, 257 (2013).

John Doe has not demonstrated that the magistrate court failed to recognize that the matter was committed to its discretion, acted outside the boundaries of its discretion, failed to act in accordance with applicable legal standards, or failed to exercise reason in reaching its decision.

**C.  We do not reach John Doe's claim that this case should have been filed under the Child Protective Act and not the Domestic Violence Protection Act because it is not supported by argument or authority.**

John Doe contends that: "A case involving an allegation that a parent has caused abuse to their child should be filed under the Child Protective Act rather than the Domestic Violence Protection Act." John Doe reasons that the magistrate court entered an Order for Child Protection Investigation and the "Dept. of Health and Welfare did not pursue the filing of a child protection action and the case was closed." John Doe concludes: "It would seem that this type of case when there is a determination that a child has been abused would be under the exclusive jurisdiction in the civil court as a child protection case rather than as domestic violence case."

"We will not consider assignments of error not supported by argument and authority in the opening brief." *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008) (quoting *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006)). Because John Doe has not provided any supporting argument or authority, we do not further address this issue.

**D.  John Doe's claim that his fundamental rights as a parent have been violated by entry of a protection order is not properly before this Court.**

For the first time in these proceedings, John Doe's reply brief advances a claim that "his fundamental rights as a parent have been violated by the entry of the protection order." We will not consider this claim for two reasons. First, the claim was raised for the first time on appeal. "The longstanding rule of this Court is that we will not consider issues that are raised for the first time on appeal." *Gordon v. Hedrick*, 159 Idaho 604, 612, 364 P.3d 951, 959 (2015) (quoting *Row v. State*, 135 Idaho 573, 580, 21 P.3d 895, 902 (2001)). Second, the claim was raised for the first time in John Doe's reply brief.

> In order to be considered by this Court, the appellant is required to identify legal issues and provide authorities supporting the arguments in the opening brief. A reviewing court looks to the initial brief on appeal for the issues presented on appeal. Consequently, this Court will not consider arguments raised for the first time in the appellant's reply brief.

*Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004) (internal citations and quotations omitted).

## IV. CONCLUSION

We affirm the magistrate court's modified protection order and award costs to Jane Doe.

Chief Justice J. JONES, Justice BURDICK and Justice Pro Tem SCHROEDER, **CONCUR**.

Justice W. JONES CONCURS in the result only.