# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 51756

| | | |
|---|---|---|
| In the Matter of: Jane Doe II, A Child Under Eighteen (18) Years of Age. | ) ) | |
| JOHN DOE I AND JANE DOE I, Husband and Wife, | ) ) ) | Opinion Filed: December 3, 2024 |
| Petitioners-Respondents, | ) ) | Melanie Gagnepain, Clerk |
| v. | ) ) ) | |
| JOHN DOE (2024-16), | ) ) | |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the Third Judicial District, State of Idaho, Canyon County. Hon. Courtnie Tucker, Magistrate.

Judgment terminating parental rights, <u>reversed</u>; and <u>case remanded</u>.

Aaron Bazzoli, Chief Public Defender, Canyon County Public Defender's Office; Brigette Borup, Deputy Public Defender, Caldwell, for appellant.

J. Michael Kulchak, Kulchak & Associates, Boise, for respondents.

---

HUSKEY, Judge

John Doe appeals from the magistrate court's judgment terminating his parental rights to his child, Jane Doe II (Child). Doe argues the magistrate court violated his due process rights by terminating his parental rights pursuant to Idaho Code § 16-2005(1)(d) because that ground was not alleged in the petition to terminate his parental rights, supported by the statement of facts in the petition, raised at the termination hearing, or listed as a ground in the written closing argument by Jane Doe I (Mother) and John Doe I (Stepfather). Doe further argues the magistrate court erred in finding that Doe is unable to discharge parental responsibilities, and such inability will continue for a prolonged indeterminate period and be injurious to the health, morals, or well-being of Child pursuant to I.C. § 16-2005(1)(d), and it is in Child's best interests to terminate Doe's parental rights. Mother and Stepfather argue they were not required to allege a specific basis pursuant to

1

I.C. § 16-2005, only that they were moving to terminate Doe's parental rights and that the facts alleged in the petition support terminating Doe's parental rights. The magistrate court's judgment terminating Doe's parental rights is reversed, and the case is remanded to the magistrate court with instructions to dismiss the petition without prejudice.

## I.

### FACTUAL AND PROCE DURAL BACKGROUND

Doe is the father of Child; Doe was married to Mother, but the two divorced. Mother is currently married to Stepfather. Mother and Stepfather filed a petition seeking to terminate Doe's parental rights to Child and to allow Stepfather to adopt Child. The petition for terminating Doe's parental rights alleged the basis of "abandonment together with any other applicable grounds permitted by law." The petition did not cite to I.C. § 16-2005, the statute that sets forth the statutory grounds for terminating parental rights. The petition alleged that at the time of filing, November 21, 2022, Doe had no parental relationship with Child because Doe had not seen Child since April 2021 and his last request to see Child was in November of 2021. The petition also alleged that Doe was incarcerated and awaiting transfer to the Idaho State Correctional Institution to serve his unified sentence of eight years, with three years determinate.

Doe filed an answer, asserting he had not abandoned Child and that any lack of relationship with Child was due to Mother's unwillingness to include Doe in Child's life. Doe was appointed counsel, and the matter proceeded to a termination hearing; multiple witnesses testified for both parties. After the conclusion of the termination hearing, the parties filed written closing arguments. In their written closing argument, Mother and Stepfather cited I.C. § 16-2005 and set forth the language of the statute. Immediately following that quoted portion of the statute, Mother and Stepfather alleged, "In the instant case two bas[e]s exist for the termination of [Doe's] parental rights. Idaho Code Section 16-2005[(1)](b) Neglect and (e) [Doe] is incarcerated and will remain incarcerated for a substantial period of [Child's] minority." Mother and Stepfather then argued that "incarceration is competent evidence of neglect. In the instant case, [Doe] is incarcerated and, as such, a basis exists for the termination of his parental rights on the basis of neglect." Mother and Stepfather also argued: "With respect to (e) a parent who is incarcerated for a substantial portion of the child's life cannot provide any amount of parental care and control, subsistence, medical or other care, or control necessary for the child's well-being." They argued that Doe had been incarcerated since July 7, 2022, his full-term release date is 2030, with his earliest possible

2

release date in 2025, and that based on the length of incarceration and Doe's acknowledgment that he did not have a relationship with Child, there was a basis to terminate Doe's parental rights.

Doe responded, challenging all three asserted grounds: abandonment (I.C. § 16-2005(1)(a)); neglect (I.C. § 16-2005(1)(b)); and long-term incarceration (I.C. § 16-2005(1)(e)). Doe provided factual support and legal argument refuting each of the above-listed statutory grounds for termination. Doe also argued it is not in Child's best interests to terminate Doe's parental rights.

The magistrate court found that the petition alleged two statutory grounds for termination: abandonment, I.C. § 16-2005(1)(a),[1] and Doe was unable to discharge parental responsibilities, and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals, or well-being of Child, I.C. § 16-2005(1)(d). The ground based on I.C. § 16-2005(1)(d), was not alleged in the petition by either citation or factual allegations. The magistrate court held that Mother and Stepfather had not established that Doe abandoned Child pursuant to I.C. § 16-2005(1)(a). However, the magistrate court found Mother and Stepfather established by clear and convincing evidence that Doe's parental rights should be terminated pursuant to I.C. § 16-2005(1)(d), finding that Doe is unable to discharge parental duties for a prolonged indeterminate amount of time due to his incarceration. The magistrate court made no findings that Doe's incarceration was injurious to the health, morals, or well-being of Child. The magistrate court then concluded it is in Child's best interests to terminate Doe's parental rights. The magistrate court entered a judgment terminating Doe's parental rights. Doe appealed.

## II.

## STANDARD OF REVIEW

Where a defendant claims that his or her right to due process was violated, we defer to the trial court's findings of fact, if supported by substantial evidence. *State v. Smith*, 135 Idaho 712, 720, 23 P.3d 786, 794 (Ct. App. 2001). However, we freely review the application of constitutional principles to those facts found. *Id.*

---

[1] In its findings of fact and conclusions of law, the magistrate court erroneously cited Idaho Code § 16-2005(1)(b) as the statutory basis for abandonment. Idaho Code § 16-2005(1)(b) permits the termination of parental rights on the grounds of neglect or abuse. Idaho Code § 16-2005(1)(a) permits the termination of parental rights on the basis of abandonment.

3

## III.

## ANALYSIS

On appeal, Doe argues that his due process rights were violated because the magistrate court terminated Doe's parental rights pursuant to I.C. § 16-2005(1)(d)--a ground not alleged in the petition, not supported by the statement of facts in the petition, not argued at the termination hearing, and not listed as a basis to terminate his parental rights in Mother's and Stepfather's written closing argument. Doe argues the only statutory basis set forth in the petition was abandonment and the facts alleged in the petition were insufficient to justify terminating his parental rights on any other ground, including I.C. § 16-2005(1)(d). According to Doe, because the petition only alleged abandonment and the facts did not support any other ground(s), the magistrate court violated his due process rights when it terminated his parental rights pursuant to I.C. § 16-2005(1)(d). Doe further asserts that had he known I.C. § 16-2005(1)(d) was a basis on which Mother and Stepfather sought to terminate his parental rights, his defense strategy would have been entirely different. Doe also argues there was not clear and convincing evidence that Doe's incarceration resulted in his inability to discharge his parental responsibilities for a prolonged period of time and would be injurious to the health, morals, or well-being of Child, or that termination of his parental rights is in the best interests of Child.

Mother and Stepfather argue Doe has waived any challenge to the sufficiency of the petition because he did not raise the issue in the magistrate court. Alternatively, Mother and Stepfather assert the petition put Doe on notice that they were seeking to terminate Doe's parental rights, and they did not need to allege the precise ground. Finally, Mother and Stepfather argue substantial and competent evidence supports the magistrate court's findings that Doe is unable to discharge his parental duties due to his incarceration and that termination of Doe's parental rights is in Child's best interests.

Mother and Stepfather are correct, Doe did not challenge the sufficiency of the petition in the magistrate court and that Idaho appellate courts will not consider issues that are raised for the first time on appeal. *Doe v. Doe*, 160 Idaho 854, 860, 380 P.3d 175, 181 (2016). However, Doe is not challenging, generally, the sufficiency of the petition. Instead, Doe raises a different claim: the magistrate court violated his due process rights when it terminated his parental rights on a ground not alleged by Mother and Stepfather in the petition, not supported by the facts set forth in the petition, not argued during the termination hearing, and not included as a ground in Mother

4

and Stepfather's written closing argument. Consequently, Doe's claim is properly before this Court.

Idaho Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." I.R.C.P. 8(a)(2). However, a plaintiff's complaint must still "state an underlying cause of action and the facts from which that cause of action arises." *Navo v. Bingham Mem'l Hosp.*, 160 Idaho 363, 375, 373 P.3d 681, 693 (2016). The standard in notice pleadings is so that parties may know the nature of the claim and the facts alleged. *Clark v. Olsen*, 110 Idaho 323, 326, 715 P.2d 993, 996 (1986). For termination of parental rights, I.C. § 16-2006(h) requires that the petition to terminate parental rights includes "[t]*he grounds* on which termination of the parent and child relationship is sought." (Emphasis added.) As relevant to this appeal, those grounds are set forth in I.C. § 16-2005(1) as follows:

> (1)      The court may grant an order terminating the relationship where it finds that termination of parental rights is in the best interests of the child and that one (1) or more of the following conditions exist:
>     (a) The parent has abandoned the child.
>     (b) The parent has neglected or abused the child.
>     (c) The presumptive parent is not the biological parent of the child.
>     (d) The parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child.
>     (e) The parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority.

Each statutory ground is an independent basis for termination. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Idaho Code § 16-2004 permits various parties to file a petition to terminate another party's parental rights. Idaho Code § 16-2004(a) allows one parent to seek to terminate the rights of another parent; for ease of reference, this Court will refer to this type of termination of parental rights as a private termination. Idaho Code § 16-2004(c) permits an authorized agency, like the Department of Health and Welfare (Department), to seek termination; we will characterize this type of termination of parental rights as a public termination.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *Doe*, 144 Idaho at 842, 172 P.3d at 1117. Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be

5

met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

In *Matter of Doe II*, a private termination case, the child's legal guardians filed a petition to terminate the parental rights of the mother and father. *Matter of Doe II*, 169 Idaho 170, 172, 492 P.3d 1129, 1131 (2021). The petition alleged that the parental rights of the mother and father should be terminated "pursuant to Idaho Code section 16-2001 *et seq.*, including, but not limited to, Idaho Code section 16-2005(1)(d), (1)(e), (3) and/or (4)." *Matter of Doe II*, 169 Idaho at 173, 492 P.3d at 1132. The petition made no factual allegations as to why the mother's and father's parental rights should be terminated. *Id*. The mother filed an I.R.C.P. 12(b)(6) motion on the ground that the petition to terminate her rights provided insufficient factual notice of the ground to terminate her rights; the motion was never ruled on. *Matter of Doe II*, 169 Idaho at 175, 492 P.3d at 1134. After a termination trial, the guardians and the mother each submitted proposed findings of fact and conclusions of law. *Id*. at 174, 492 P.3d at 1133. In her filing, the mother alleged the guardians' petition failed to allege a statement of facts justifying termination and did not provide her with sufficient notice of the specific conduct upon which her parental rights could be terminated. *Id*. The magistrate court found that because the guardians listed I.C. § 16-2001, *et. seq*, including but not limited to I.C. § 16-2005(1)(d), (1)(e), (3) and/or (4), the mother and father were on notice that all of the grounds contemplated by the statute would be possible grounds on which to terminate their parental rights. *In the Matter of Doe II*, 169 Idaho at 174, 492 P.3d at 1133. The magistrate court entered an order terminating father's parental rights pursuant to I.C. § 16-2005(1)(a), abandonment, despite the fact that neither the ground, nor the facts to support that ground, had been raised in the petition. *In the Matter of Doe II*, 169 Idaho at 174, 492 P.3d at 1133. The magistrate court also found that both mother and father neglected the child pursuant to I.C. § 16-2005(1)(b), despite the fact that neither that ground, nor the facts supporting that ground, had been pleaded in the petition. *In the Matter of Doe II*, 169 Idaho at 174, 492 P.3d at 1133. The magistrate court also terminated mother's and father's parental rights pursuant to I.C. § 16-

2005(1)(d), a ground specifically pleaded in the petition.  *In the Matter of Doe II*, 169 Idaho at 174, 492 P.3d at 1133.  Mother and father appealed.  *Id*. at 174-75, 492 P.3d at 1133-34.

The Supreme Court noted that, in light of the fundamental right to parent, a pleading so devoid of factual allegations violates due process principles.  *Id.* at 179, 492 P.3d at 1138.  The Court held that the verified petition lacked factual and legal notice of the grounds sought to terminate the mother's and father's parental rights because the petition failed to plead any facts regarding the mother's or father's conduct which would warrant termination of their parental rights.  *Id.* at 178, 492 P.3d at 1137.  The Supreme Court noted that neither I.C. § 16-2005(3) nor (4) were grounds for terminating parental rights.  *In the Matter of Doe II*, 169 Idaho at 178, 492 P.3d at 1137.  Ultimately, the Court concluded that mother and father were not put on notice of the grounds that were later pursued at trial by the guardians.  *Id*. at 178-79, 492 P.3d at 1137-38.  The Court reversed the judgment and remanded the case with instructions to dismiss the petition without prejudice.  *Id.* at 180, 492 P.3d at 1139.

In *Matter of Doe II*, the Idaho Supreme Court cited *In Int. of Dayley*, 112 Idaho 522, 733 P.2d 743 (1987) as foundation for its reiteration that it is "not necessary [to] allege precisely which of the six[2] subsections of I.C. § 16-2005 under which [the State] was proceeding.  A simple and concise *statement of facts* is all that is necessary."  *Matter of Doe II*, 169 Idaho at 178, 492 P.2d at 1137 (emphasis added) (quoting *Dayley*, 112 Idaho at 525, 733 P.2d at 746).  However, *Dayley* involved a public termination, not a private termination.

In *Dayley*, a father argued that his due process rights had been violated when the Department's termination petition against him "failed to specify which of the six grounds for termination of parental rights set forth in I.C. § 16-2005 (1979) the state was alleging."  *Dayley*, 112 Idaho at 524, 733 P.2d at 745.  In that case, the petition alleged:

> The natural father of [Child], [Doe], is currently incarcerated in the Idaho State Penitentiary in Boise, Ada County, Idaho.  The records in this case show that the natural father of the child has failed to comply with his agreement with the Department of Health and Welfare for reuniting the family and that he has failed to cooperate with the Department of Health and Welfare in attempts to provide adequate care and a stable home environment for the child.

*Id*. at 525, 733 P.2d at 746.  The Supreme Court held that because the petition contained a paragraph of factual allegations addressing specific circumstances upon which his parental rights

---

[2]     Idaho Code § 16-2005 has subsequently been amended and now I.C. § 16-2005(1) includes statutory grounds upon which parental rights can be terminated.

7

could be terminated, father had been "provided adequate notice that the state was seeking to terminate his parental rights." *Id.*

*Dayley* is inapposite to this case for several reasons. First, *Dayley* involved a public termination and therefore, as a necessary predicate to the termination petition, there had been approximately one year in which a court-approved case plan was in place. *Id.* at 523, 733 P.3d at 744. Second, the factual recitation in *Dayley* provided explicit notice of which grounds of termination were sought: Dayley's neglect by failing to "comply with his agreement with the Department of Health and Welfare for reuniting the family" and failing "to cooperate with the Department of Health and Welfare in attempts to provide adequate care and a stable home environment for the child."[3] *Id.* at 525, 733 P.2d at 746. Finally, the circumstances that brought Dayley's child into the Department's care were circumstances relating to neglect. *Id*. at 523, 733 P.2d at 744. As a result, Dayley was on notice for at least one year that one of the statutory grounds for terminating his parental rights was neglect and the facts alleged in the petition provided Dayley with notice that his rights were subject to termination pursuant to I.C. § 16-2005(b) as defined by I.C. § 16-2002(3)(b). The same is not true in this case.

In this case, the petition to terminate Doe's parental rights only listed abandonment as a basis to terminate Doe's parental rights. Section IX of the petition alleged:

> There presently exists no parental relationship between said minor child and her biological father, [Doe]. Even though [Doe] has knowledge of [Child], he has made no attempt to see the minor child at issue since November, 2021. [Doe] last saw the child in April, 2021. [Doe] is currently incarcerated at the Ada County Jail awaiting transfer to the Idaho State Correctional Institution and has been sentenced to 3 years fixed and 5 years indeterminate in Ada County Case No. [ ] in which he pled guilty to attempted strangulation of the Petitioner [Mother].

Section X of the petition alleged:

---

[3]     The allegation reflected the language of I.C. § 16-2002(3)(b):
"Neglected" means:
. . . .
(b) The parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and:
(i) The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and
(ii) Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

The grounds for termination of the parent and child relationship between [Child] and her biological father are: abandonment together with any other applicable grounds permitted by law.

Like in *Matter of Doe II*, a review of Mother's and Stepfather's petition reveals a lack of factual and legal notice of the grounds to terminate Doe's parental rights. The petition is devoid of any citation to I.C. § 16-2005 or any other statutory citation that would provide Doe with notice of any legal ground(s) for termination, except abandonment, which was specifically alleged in the petition. While specifically alleging "abandonment" mirrors the language of I.C. § 16-2005(a), the language "any other applicable grounds" does not comply with I.C. § 16-2006(h), which requires the grounds for termination to be set forth in the petition. Mother's and Stepfather's statement, "any other applicable grounds permitted by law," is insufficient to protect Doe's due process rights in relation to his fundamental right to parent. *See Doe*, 169 Idaho at 178, 492 P.3d at 1137.

The facts set forth in the termination petition are equally insufficient to provide notice to Doe that Mother and Stepfather were seeking to terminate his parental rights on any ground other than abandonment. It is true in this case, unlike in *Matter of Doe II*, the petition contained a factual recitation regarding the length of Doe's term of incarceration and his potential parole dates. However, the fact of incarceration could be a fact that is relevant to multiple statutory grounds for termination and, in and of itself, does not provide Doe with notice of which of the specific ground(s) set forth in I.C. § 16-2005 were being alleged by Mother and Stepfather. Alleging the specific ground is required because several of the statutory grounds require facts in addition to the fact that Doe is incarcerated. For example, I.C. § 16-2005(1)(d), the basis upon which Doe's parental rights were terminated, requires that "the parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child." Nothing about the fact that Doe is incarcerated, alone, sufficiently identifies how Doe was unable to discharge his parental responsibilities and how his incarceration was injurious to the health, morals, or well-being of Child. Alleging incarceration alone fails to identify the specific ground as required by I.C. § 16-2006(h) and fails to provide Doe with adequate notice.

As noted by the Idaho Supreme Court, incarceration, in and of itself, is not a statutory basis on which to terminate parental rights. When dealing with incarcerated parents, the Court noted that reality "must play a part at two levels." *Doe*, 137 Idaho at 762, 53 P.3d at 345. The Court

9

explained that, first, courts must recognize the context in which incarcerated parents attempt to establish or maintain a relationship because incarcerated parents are "severely restricted" in what they can do. *Id*. Second, the Court held that trial courts must assess the Department's efforts to assist the parent in establishing or maintaining that relationship. *Id*. While the fact of incarceration could impact and significantly reduce a parent's ability to discharge parental responsibilities, a parent could still fulfill some parental responsibilities while incarcerated.

Moreover, pursuant to I.C. § 16-2005(1), there are four[4] other independent grounds on which to terminate parental rights. While the fact of one parent's incarceration might be relevant, there are other facts in addition to the fact of incarceration that must be pleaded to provide notice of which ground(s) of I.C. § 16-2005 is being alleged.

---

[4] One of those grounds, I.C. § 16-2005(1)(b), is neglect, which requires two additional statutory references to provide the full definition. The first is I.C. § 16-2002(3), which provides:
> (3) "Neglected" means:
>> (a) Conduct as defined in section 16-1602(31), Idaho Code; or
>> (b) The parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and:
>>> (i) The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and
>>> (ii) Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

The second ground is I.C. § 16-1602(31), which provides:
> (31) "Neglected" means a child:
>> (a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them; however, no child whose parent or guardian chooses for such child treatment by prayers through spiritual means alone in lieu of medical treatment shall be deemed for that reason alone to be neglected or lack parental care necessary for his health and well-being, but this subsection shall not prevent the court from acting pursuant to section 16-1627, Idaho Code; or
>> (b)Whose parent, guardian or other custodian is unable to discharge the responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being; or
>> (c) Who has been placed for care or adoption in violation of law; or
>> (d) Who is without proper education because of the failure to comply with section 33-202, Idaho Code.

In its findings of fact and conclusions of law, the magistrate court specifically quoted the language of the petition to terminate as it related to the grounds for termination and then held that only I.C. § 16-2005(1)(a) (abandonment) and I.C. § 16-2005(1)(d) (the inability to discharge parental responsibilities for a prolonged indeterminate amount of time which will be injurious to the health, morals, or well-being of the child) were sufficiently pleaded based on I.R.C.P. 8. The magistrate court's conclusion that the petition adequately alleged I.C. § 16-2005(1)(d) as a basis to terminate Doe's parental rights is incorrect. The petition did not cite to I.C. § 16-2005(1)(d), did not quote the language of I.C. § 16-2005(1)(d), and did not allege a sufficient factual basis explaining how or why Doe's incarceration renders him unable to discharge parental responsibilities for a prolonged period of time and how his inability will be injurious to the health, morals, or well-being of Child. These additional facts would be necessary to properly allege the ground in a petition which does not otherwise specify the specific code section and would be necessary to establish by clear and convincing evidence the statutory elements and to address the fact that Child was not at any risk of harm and was being adequately cared for by Mother and Stepfather. Thus, in the initial petition, Mother and Stepfather only set forth the legal theory of abandonment as a statutory basis upon which to terminate Doe's parental rights, and they supported that claim with factual allegations. To permit Mother and Stepfather to use the facts that support the abandonment ground to support an altogether different ground, without providing any notice of the specific ground to Doe, fails to provide the requisite due process notice to which Doe was entitled. Consequently, the magistrate court erred in concluding the petition sufficiently pleaded I.C. § 16-2005(1)(d) as a basis to terminate Doe's parental rights.

This Court recognizes that the facts as alleged in this case *might* be sufficient to provide notice in a public termination because the parent whose rights are being terminated already has notice of the ground(s) of termination. This is because, in the context of a public termination, a parent(s) has actual notice of the circumstances that brought the child within the purview of the Child Protection Act (CPA) and those grounds are often the same grounds on which the Department later seeks to terminate those parental rights. Thus, because of the history of the case and the preexisting knowledge of the parent(s), the Department need not plead the specific statutory basis on which they are arguing to terminate parental rights. *Matter of Doe II*, 169 Idaho at 178, 492 P.3d at 1137 (reiterating that in public termination it is not necessary to allege precisely which subsections of I.C. § 16-2005 under which State is proceeding). But in a private termination,

11

there is no underlying CPA action, and there often is little, if any, prior notice of the grounds for termination to the parent whose rights are being terminated. Moreover, public and private terminations have different policy rationales and procedural protections.

There are two underlying policy rationales for terminating parental rights: (1) to "[p]rovide for voluntary and involuntary severance of the parent and child relationship and for substitution of parental care and supervision by judicial process" in order to "safeguard[] the rights and interests of all parties concerned and promoting their welfare and that of the state of Idaho"; *and* (2) to "[p]rovide permanency for children who are under the jurisdiction of the court through the child protective act" in cases "where the court has found the existence of aggravated circumstances or that reasonable efforts to return the child to his or her home have failed." I.C. § 16-2001(1). Neither purpose is relevant in a private termination. The first purpose is difficult to apply in a private termination because the rationale underpinning the reasons for a public termination are significantly different than in a private termination. The second purpose is not relevant here because, in this case, Child was never the subject of a child protection case.

Public terminations are predicated on the child being within the purview of the CPA, I.C. § 16-1601 *et. seq*. The policy of I.C. § 16-1601 is, in relevant part:

> the ***protection of any child whose life, health or welfare is endangered***. At all times, the health and safety of the child shall be the primary concern. . . . [If child] is removed from the control of one (1) or more of his parents, guardian or other custodian, the state shall secure adequate care for him; provided, however, ***that the state of Idaho shall, to the fullest extent possible, seek to preserve, protect, enhance and reunite the family relationship***.

(Emphasis added.)

Further, the CPA, I.C. § 16-1601, seeks to:

(1) Preserve the privacy and unity of the family whenever possible;
(2) Take such actions as may be necessary and feasible to prevent the abuse, neglect, abandonment or homelessness of children;
(3) Take such actions as may be necessary to provide the child with permanency including concurrent planning;
(4) Clarify for the purposes of this act the rights and responsibilities of parents with joint legal or joint physical custody of children at risk; and
(5) Maintain sibling bonds by placing siblings in the same home when possible, and support or facilitate sibling visitation when not, unless such contact is not in the best interest of one (1) or more of the children.

While these policies are relevant in a public termination, they are simply inapplicable in a private termination. A private termination is generally not triggered by concerns for the safety of

the child, as the child is usually being adequately cared for by the custodial parent and, in many cases, that parent's partner. Instead, a private termination usually involves the child's custodial parent and the custodial parent's new partner, seeking to terminate the non-custodial parent's rights so the new partner may adopt the child. As a result, in a private termination, "one or more individuals is seeking termination as a *private remedy* of some kind, that is, to obtain a benefit to that petitioner, rather than to serve a broad public interest, even if the applicable legal standard refers to 'the best interest of the child.'" Deirdre M. Smith, *Termination of Parental Rights as a Private Remedy: Rationales, Realities, and Alternatives*, 72 Syracuse L. Rev. 1173, 1186 (2022).

Public and private terminations are also procedurally different. In a public termination, there is a predicate child protection case that originates when the Department seeks temporary, and then permanent, custody of a child based on a risk of harm to the child. In that situation, the State is acting against a parent pursuant to its *parens patriae* authority to protect children. *See Spaulding v. Children's Home Finding & Aid Soc. of N. Idaho, Inc.*, 89 Idaho 10, 26, 402 P.2d 52, 62 (1965) (noting "The power of the state as *parens patriae* to take the place of the parent and to assume parental authority over a child by reason of its misfortune to the end that the child's best interests and welfare be served"). The CPA sets forth the process by which the parents may reunify with a child who has been removed from their care. In a CPA case, the Department must file a petition explaining why the child is within the purview of the CPA. I.C. § 16-1610(2)(a). The petition must include various information, including, "The facts which bring the child within the jurisdiction of the court upon the grounds set forth in section 16-1603, Idaho Code, with the actions of each parent described therein." I.C. § 16-1610(2)(a). Idaho Code § 16-1603(1) lists the acts that would bring the child within the purview of the CPA; that is, a child:

(a) Who is neglected, abused or abandoned by his parents, guardian or other legal custodian, or who is homeless; or
(b) Whose parents or other legal custodian fails to provide a stable home environment.

Idaho Code § 16-1611(a) and (b) requires a copy of the petition attached to the summons bringing the parents into court.

In every case in which the child is subject to the CPA, the Department "shall prepare a written case plan, including cases in which the parent(s) is incarcerated." I.C. § 16-1621(1). The case plan is to be provided to the parent(s). I.C. § 16-1621(1). If the child is in the custody of the Department, the case plan shall include "reasonable efforts that will be made to make it possible

13

for the child to return home." I.C. § 16-1621(3). The case plan must also "include a goal of reunification and a plan for achieving that goal." I.C. § 16-1621(3)(c). The reunification plan:

> shall specifically identify the tasks to be completed by the department, each parent or others to address each issue, including services to be made available by the department to the parents and in which the parents are required to participate, and deadlines for completion of each task. The case plan shall state with specificity the role of the department toward each parent. When appropriate, the reunification plan should identify terms for visitation, supervision of visitation and child support.

I.C. § 16-1621(3)(c).

A case plan hearing is held, and the district court must make factual findings, including whether the case plan includes the above requirements. Thereafter, the court must hold periodic review hearings regarding the status of the child(ren) and the progress the parent(s) is making on the case plan. I.C. § 16-1622. The reunification process generally lasts a minimum of fifteen months, by which time the trial court shall determine whether reunification is possible, and if not, whether termination of the parental rights is in the best interests of the child(ren). I.C. § 16-1622(2)(g). Once the trial court concludes that reunification is not appropriate, the Department files a petition pursuant to Title 16, Chapter 20, to terminate parental rights in the CPA case, which terminates the CPA case. I.C. § 16-1624. Thus, prior to the trial court determining that termination of parental rights is in the best interests of the child(ren), there is a substantial period of time during which the parent(s) is on notice of the deficits in his parenting skills. Failure to correct such deficits could provide a basis upon which to terminate his parental rights, and the court will be reviewing both the efforts of the Department and the parent(s) in working towards reunification.

Procedurally, private terminations are not governed by I.C. § 16-1601, and there is no requirement to "preserve, protect, enhance and reunite the family relationship" between the non-custodial parent and the child. Private terminations usually lack the predicate CPA proceedings and the concomitant protections of the fundamental liberty interest in parenting that are required in a public termination: there is no case plan; there are no periodic court reviews of the reunification attempts; and there is no minimum period of time during which those reunification efforts must occur. Sometimes in a private termination, there is not even a custody order under which parenting expectations can be defined and measured.

Given the lack of procedural history in private terminations, in order to comply with the parent's due process rights to protect a fundamental liberty interest, the petitioner must allege the specific statutory ground in the termination petition upon which they are alleging the other parent's

14

rights should be terminated, either by specific statutory citation or by using the language of the statutory ground. In the absence of a specific statutory citation or the language of the specific subsection, the petition is required to allege facts that clearly identify the specific ground(s) under which the petitioner is proceeding.

Thus, in this case, Mother and Stepfather needed to specifically identify the statutory ground(s) upon which they were alleging Doe's parental rights should be terminated either by specific statutory citation or by using the language of the statutory ground, as required by I.C. § 16-2006(h). Short of a specific statutory citation or the language of the statute, Mother and Stepfather needed to allege sufficient facts that clearly identified the specific ground under which they were proceeding. There was no statutory citation in the petition, but Mother and Stepfather did use the word "abandonment," which put Doe on notice that his parental rights could be terminated pursuant to I.C. § 16-2005(1)(a). The facts alleged by Mother and Stepfather were insufficient to specifically identify any ground for terminating Doe's parental rights except abandonment. Doe was not required to guess which (or all) of the other unalleged grounds for which his parental rights could be terminated were at issue because the pleading standard "requires more than a naked recitation of facts from which a hyper-vigilant attorney could possibly foresee the possibility of a given cause of action." *Brown v. City of Pocatello*, 148 Idaho 802, 809-10, 229 P.3d 1164, 1171-72 (2010). Additionally, where Mother and Stepfather specifically alleged abandonment (although without citation to I.C. § 16-2005(1)(a)) and alleged facts that might support that ground, Doe was not on notice that any of the other subsections of I.C. § 16-2005(1) would be at issue.

The problem with not requiring such specificity is demonstrated in this case. Doe's answer and his defense during the termination hearing was that he had not abandoned Child. Doe presented evidence to explain why he had not had contact with Child, what he had done to comply with the child support order, his incarceration term, and his expectation for release. After the termination hearing, Mother and Stepfather submitted a written closing argument in which they selected two new and different statutory grounds upon which they sought to terminate Doe's parental rights: I.C. § 16-2005(1)(b) (neglect) and I.C. § 16-2005(1)(e) (parent is incarcerated and likely to remain so for a substantial period of time). Therein, they argued: "In the instant case two bas[e]s exist for the termination of [Doe's] parental rights. Idaho Code Section 16-2005[(1)](b) Neglect and (e) [Doe] is incarcerated and will remain incarcerated for a substantial period of time

15

of [Child's] minority." As further clarification, Mother and Stepfather argued as to subsection (e): "a parent who is incarcerated for a substantial portion of the child's life cannot provide any amount of parental care and control, subsistence, medical or other care, or control necessary for the child's well-being."

There are two problems with Mother's and Stepfather's written closing argument. First, Mother and Stepfather never sought leave to amend the petition pursuant to I.R.C.P. 15. Parties cannot amend pleadings after the opposing party has responded unless the court permits such amendment. *See* I.R.C.P. 15(a)(2). As demonstrated by this case, there are various reasons that allowing the petitioner to raise new and different grounds to terminate parental rights after the completion of the evidentiary hearing is problematic.

Second, the problem with the above-quoted language in the written closing statement is that Mother's and Stepfather's statement regarding I.C. § 16-2005(1)(e) is not language from that subsection but is instead language quoted from I.C. § 16-1602(31)(a) and incorporated into the definition of neglect pursuant to I.C. § 16-2005(1)(b). Idaho Code § 16-1602(31)(a) defines neglect and reads in relevant part: "Neglected means a child: (a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents." Based on Mother's and Stepfather's written closing argument, it appears they have conflated I.C. § 16-2005(1)(e), which authorizes termination based on long-term incarceration which is likely to continue for a substantial period of the child's minority, with I.C. § 16-1602(31)(a), which is a definition of neglect that is incorporated by reference into I.C. § 16-2005(1)(b), the statutory basis of neglect. As a result, it is not clear from Mother's and Stepfather's written closing argument whether the language quoted from I.C. § 16-1602(31)(a) is being cited as factual support for their neglect claim under I.C. § 16-2005(1)(b), whether they thought I.C. § 16-2005(1)(e) was a variation of neglect, or whether they were attempting to argue that Doe's long-term incarceration would impact Child pursuant to I.C. § 16-2005(1)(b), in which case, the language is not a factual recitation, but instead, legal argument. More importantly, in the written closing argument, Mother and Stepfather were no longer pursuing the abandonment claim and did not assert that I.C. § 16-2005(1)(d) was a ground on which to terminate Doe's parental rights.

Doe addressed the later-added grounds of neglect, I.C. § 16-2005(1)(b), and long-term incarceration, I.C. § 16-2005(1)(e), in his written closing argument. Doe's arguments were

necessarily limited to the factual support adduced during his challenge to the abandonment ground. First, Doe argued Mother and Stepfather had not established abandonment. Second, Doe argued that they had not established Doe neglected Child. Third, Doe argued that he was not likely to remain incarcerated for a substantial period of Child's minority or that his incarceration would have any negative impact on Child. Finally, Doe argued that termination of his parental rights is not in the best interests of Child.

But Doe had no way of knowing and, therefore, no way of defending against, the ultimate basis for termination, I.C. § 16-2005(1)(d), because it was not a basis alleged by Mother and Stepfather in the petition for termination and adoption. Doe was not required to provide a defense against every basis for terminating his parental rights when Mother and Stepfather expressly disavowed any of the other grounds by explicitly selecting only two grounds: I.C. § 16-2005(1)(b) (neglect) and (e) (long-term incarceration).

In its findings of fact and conclusions of law, the magistrate court found that Mother and Stepfather had not established abandonment. The court did not address either of the grounds set forth in Mother's and Father's written closing argument, instead finding the petition adequately pled I.C. § 16-2005(1)(d) as a statutory ground for terminating Doe's parental rights. Thus, when the magistrate court terminated Doe's parental rights pursuant to I.C. § 16-2005(1)(d), it did so on a statutory basis that was not pled or supported by factual allegations in the termination petition. As a result, the magistrate court committed a procedural error that affected Doe's fundamental rights.

Mother and Stepfather argue that although they did not cite I.C. § 16-2005 in the petition generally, or I.C. § 16-2005(1)(d) in either the termination petition or in the written closing argument, the factual allegations, when read together, provided Doe with sufficient notice that they sought to terminate his parental rights pursuant to I.C. § 16-2005(1)(d). We disagree. Our notice pleading standard requires more than a vague statement about the applicability of relevant law from which a hyper-vigilant attorney could possibly foresee the possibility of all the various legal grounds, and the factual support for each, on which a person's parental rights can be terminated. *Brown*, 148 Idaho at 809-10, 229 P.3d at 1171-72.

Like in *Matter of Doe II*, *supra*, the petition filed by Mother and Stepfather in this case does not sufficiently plead any basis for terminating Doe's parental rights other than abandonment, a ground which Mother and Stepfather ultimately chose not to pursue. Mother and Stepfather

17

never asserted that Doe's parental rights should be terminated pursuant to I.C. § 16-2005(1)(d). Mother and Stepfather cannot now argue that Doe had notice his parental rights could be terminated pursuant to I.C. § 16-2005(1)(d) when they failed to provide *any* statutory citation in their petition or failed to provide sufficient factual support for that basis in the petition. When Mother and Stepfather limited the grounds on which they sought termination, Doe could rely on those limited grounds as the exclusive grounds pled for terminating his parental rights. Mother and Stepfather cannot now argue that a basis not listed, argued, or relied upon by them is an alternate basis for terminating Doe's parental rights. The theory--that Doe's parental rights should be terminated pursuant to I.C. § 16-2005(1)(d)--having never been pleaded, was not properly before the magistrate court. Mother and Stepfather made no request for leave to amend the petition and limited the grounds they alleged would support terminating Doe's parental rights.

Because the initial petition did not specifically allege, either through statutory citation, statutory language, or specific facts, that Doe's parental rights were subject to termination pursuant to I.C. § 16-2005(1)(d), the magistrate court erred in terminating Doe's parental rights on that basis. Because Doe was not provided adequate notice of the legal theory on which his parental rights were terminated and because we reverse the magistrate court's judgment and order on that ground, we need not address the remaining arguments on appeal.

## IV.

## CONCLUSION

The magistrate court erred in terminating Doe's parental rights pursuant to I.C. § 16-2005(1)(d) where that basis was not alleged in the petition, supported by the facts asserted in the petition, or addressed in Mother's and Stepfather's closing argument. The magistrate court's judgment terminating Doe's parental rights is reversed, and the case is remanded to the magistrate court with instructions to dismiss the petition without prejudice.

Judge LORELLO and Judge TRIBE **CONCUR**.